**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**Civil Action No: 1:10-CV-122**

| | |
|---|---|
| QUEENS GAP HOLDING COMPANY, LLC, and D.F. McCARTHY INVESTMENTS XVIII, LLC<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF ASHEVILLE,<br><br>Defendant. | **COMPLAINT** |

Plaintiffs Queens Gap Holding Company, LLC, and D.F. McCarthy Investments XVIII, LLC, (collectively, "the McCarthy Entities") complaining of the actions of Defendant Bank of Asheville ("Bank of Asheville"), state and allege as follows:

**THE PARTIES**

1. Queens Gap Holding Company, LLC is an Ohio limited liability corporation with its principal place of business in Cincinnati, Ohio.

2. D.F. McCarthy Investments XVIII, LLC is an Ohio limited liability corporation with its principal place of business in Cincinnati, Ohio.

3. Bank of Asheville is a North Carolina corporation with its principal place of business in Asheville, North Carolina.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Bank of Asheville is a business organized under the laws of North Carolina with its principal business in Asheville, North Carolina, and no Plaintiff resides, is incorporated, or has its

principal place of business in North Carolina. Moreover, the amount of controversy between the parties, exclusive of interests and costs, exceeds $75,000.

5. This court has personal jurisdiction over Bank of Asheville because Bank of Asheville has substantial contacts with this State and the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In particular, Bank of Asheville is a North Carolina corporation, has its principal place of business in North Carolina, and maintains at least five branch offices in North Carolina. Moreover, the substantial majority of the events giving rise to this Complaint occurred in North Carolina.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

7. In 2006, the McCarthy Entities purchased approximately 3,500 acres of property near Asheville, North Carolina.

8. The McCarthy Entities planned to develop this property into a residential community called "Queens Gap" with approximately 1,400 homes, a golf course designed by legendary golfer Jack Nicklaus, and several amenities designed to highlight the area and its natural surroundings, including hiking trails, an outfitter's lodge and an equestrian center.

9. After a period of strong sales at Queens Gap, sales slowed in 2008, and Devin F. McCarthy ("McCarthy") began to experience some health issues and eventually decided to enter into a purchase agreement with Keith Vinson ("Purchase Agreement"), a real estate developer who also planned to develop Seven Falls, a residential golf community in Etowah, North Carolina.

10. The Purchase Agreement was executed by McCarthy, the sole owner and principal of the McCarthy Entities, on behalf of the McCarthy Entities and by Vinson on behalf of Queens Gap Acquisition LLC.

11. Under this Purchase Agreement, which was executed on May 23, 2009, Queens Gap Holding Company, LLC agreed to transfer certain limited liability companies and real and personal property to Queens Gap Acquisition LLC, including the approximately 1,400 residential lots located within the Queens Gap property.

12. In exchange, Queens Gap Acquisition LLC agreed to, among other things, pay the McCarthy Entities $24 million in accordance with a payment schedule, which included a portion of the proceeds for each lot Queens Gap Acquisition LLC sold at Queens Gap.

13. On May 23, 2009, D.F. McCarthy Investments XVIII, LLC and Queens Gap Acquisition, LLC entered into a Loan Proceeds Disbursement Agreement (the "Disbursement Agreement"), whereby the McCarthy Entities agreed to provide $4.25 million to fund a joint account held by Bank of Asheville ("the Account").

14. The purpose of the Disbursement Agreement was to "appoint a representative of the Lender [D.F. McCarthy Investments XVIII, LLC] and a representative of the Borrower [Queens Gap Acquisition LLC] to arrange the deposit of the funds, and specify the conditions under which the funds will be released and delivered to or on behalf of the Lender." The Disbursement Agreement appointed McCarthy as the representative for the Lender and Vinson as the representative for the Borrower.

15. Under the terms of the Disbursement Agreement, McCarthy and Vinson agreed to be "joint signors on th[e] [A]ccount" and that its funds could only be used to pay for construction of infrastructure improvements to Phase I of the Queens Gap property.

16. At Bank of Asheville's request, McCarthy provided it with a copy of the Disbursement Agreement. Bank of Asheville reviewed the Disbursement Agreement, and was aware of its terms and the purpose for which the Account was opened.

17. Consistent with the terms of the Disbursement Agreement, Bank of Asheville's President and Chief Executive Officer, G. Gordon Greenwood, agreed in writing on May 22, 2009 that "two signatures [would be] required on the checks [for the Account], those being of Keith [Vinson] and Devin [McCarthy]," and that Bank of Asheville would "review checks for both signatures." In addition, as a second level of protection, Bank of Asheville agreed in writing on May 22, 2009 to obtain "email authorization" from McCarthy to ensure proper withdrawal and use of the funds. These written communications are collectively attached as Exhibit A to this Complaint.

18. Had Bank of Asheville refused or indicated an unwillingness to agree to these terms as a means to protect their interest in the Account, the McCarthy Entities would not have agreed to conduct business or deposit $4.25 million in funds with Bank of Asheville. Indeed, absent these two levels of protection, counsel for the McCarthy Entities expressed concern at the time that Bank of Asheville would be unable to "verify that [McCarthy] has signed the check as the second signor before the check clears and funds are released." *See* Exhibit A.

19. In reliance on Bank of Asheville's agreement to adhere to a two-signature requirement on the Account and Bank of Asheville's agreement to obtain McCarthy's written authorization before releasing funds from the Account, McCarthy directed and authorized the McCarthy Entities to deposit $4.25 million into the Account on or about June 2, 2009. That same day, Bank of Asheville debited $14.00 from the Account to cover an incoming wiring fee, leaving a balance of $4,249,986 in the Account.

20. On or about June 18, 2009, in violation of its agreement and contrary to its statements just weeks earlier, Bank of Asheville allowed Vinson to withdraw over $4.25 million from the Account without adhering to the two-signature requirement and without obtaining McCarthy's written authorization through email or otherwise.

21. Shortly before or after these withdrawals, Bank of Asheville, upon information and belief, removed the McCarthy Entities from the Account without their authorization or knowledge, and terminated the McCarthy Entities' ability to access the Account through its online banking system without their authorization or knowledge.

22. Vinson's withdrawals resulted in a negative balance on the Account. Upon information and belief, these funds were used by Vinson for improper purposes, including for purposes inconsistent with the Disbursement Agreement. In particular, upon information and belief, Bank of Asheville knowingly accepted a portion of the funds withdrawn from the Account in payment of other obligations owed to Bank of Asheville by Vinson and/or business interests controlled by Vinson. In the meantime, the vast majority of the infrastructure for the Phase I portion of the Queens Gap property remains unfinished.

23. Unable to access the Account through Bank of Asheville's online banking system, counsel for the McCarthy Entities sent a letter to Bank of Asheville on November 9, 2009, requesting that it "confirm the [A]ccount balance and make arrangements for [McCarthy] to start receiving monthly statements on th[e A]ccount."

24. On November 10, 2009, Bank of Asheville's President and Chief Executive Officer rejected this request without explanation, merely stating that Bank of Asheville had "spoke[n] with Mr. Vinson and he said that he had spoken with [McCarthy]." Since then, Bank of Asheville has continued to block any attempt by the McCarthy Entities and their lawyers to

gain access to information regarding the Account or to recoup their lost funds. In its latest communication on June 4, 2010, Bank of Asheville alleged that it could not provide the McCarthy Entities with any information regarding the Account because "McCarthy is not a signatory under the [A]ccount."

**COUNT I**
(Breach of Contract)

25. The McCarthy Entities incorporate by reference and reallege the allegations of paragraphs 1-24 of this Complaint as though expressly set forth herein.

26. On or about May 22, 2009, Bank of Asheville agreed in writing to adhere to a two-signature requirement on the Account and further agreed to obtain written authorization from the McCarthy Entities' sole owner and principal, Devin F. McCarthy, before releasing any funds from the Account.

27. These agreements were binding and enforceable and were supported by valuable consideration. Bank of Asheville's obligations under the agreements have not been excused, released or terminated.

28. In reasonable reliance on Bank of Asheville's promises and other assurances, the McCarthy Entities deposited $4.25 million into the Account. Bank of Asheville was aware that funds from this Account could not be used for any purpose other than to pay for construction of infrastructure improvements to Phase I of the Queens Gap property.

29. In material breach of its agreements, Bank of Asheville allowed Vinson to withdraw more than $4.25 million from the Account without adhering to the two-signature requirement and without obtaining McCarthy's written authorization for the withdrawal through email or otherwise.

30. Moreover, although Bank of Asheville initially permitted the McCarthy Entities to access information regarding the Account through its online banking system, Bank of Asheville has denied the McCarthy Entities access to any information regarding the status of the Account for the past several months.

31. As a direct and proximate result of Bank of Asheville's multiple breaches of its agreements, the McCarthy Entities have suffered actual, consequential and other damages and losses in excess of $4.25 million, plus interest, or in an amount to conform to proof at trial.

**COUNT II**
(Violation of N.C. Gen. Stat. § 25-4-401)

32. The McCarthy Entities incorporate by reference and reallege the allegations of paragraphs 1-31 of this Complaint as though expressly set forth herein.

33. Under Uniform Commercial Code § 4-401, codified at N.C. Gen. Stat. § 25-4-401, a bank may charge its customers' accounts for "properly payable" items only. An item is "properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank." *Id.*

34. The McCarthy Entities were customers of Bank of Asheville and relied upon various promises and agreements with Bank of Asheville in setting up the Account with it. Such agreements included Bank of Asheville's agreement to adhere to a two-signature requirement on the Account and to obtain McCarthy's written authorization before releasing any funds from the Account.

35. Bank of Asheville violated these agreements by allowing Vinson to withdraw over $4.25 million from the Account without McCarthy's signature or written authorization. As a result, such withdrawals were not "properly payable" and were unlawfully debited from the Account by Bank of Asheville. N.C. Gen. Stat. § 25-4-401.

36. As a direct and proximate result of Bank of Asheville's violation of N.C. Gen. Stat. § 25-4-401, the McCarthy Entities have suffered actual, consequential and other damages and losses in excess of $4.25 million, plus interest, or in an amount to conform to proof at trial.

**COUNT III**
**(**Negligence**)**

37. The McCarthy Entities incorporate by reference and reallege the allegations of paragraphs 1-36 of this Complaint as though expressly set forth herein.

38. Bank of Asheville has a duty to its customers to institute and maintain reasonable policies and procedures to prevent funds from being withdrawn from their bank accounts without proper authorization.

39. At a minimum, Bank of Asheville breached this duty to the McCarthy Entities by:

a. failing to adhere to the two-signature requirement on the Account despite Bank of Asheville's written agreement to do so;

b. failing to require written authorization from McCarthy prior to the release of any funds from the Account despite Bank of Asheville's written agreement to do so;

c. allowing Vinson to withdraw funds from the Account without McCarthy's authorization despite Bank of America's written agreement to the contrary;

d. failing to institute and maintain reasonable policies and procedures to prevent the McCarthy Entities' funds from being withdrawn without proper authorization;

e. failing to notify or otherwise make the McCarthy Entities aware that the Account had been totally depleted within days after the Account was established; and

f. failing to allow the McCarthy Entities with reasonable access to information regarding the status of the Account.

40. The breaches of Bank of Asheville's duty to the McCarthy Entities, individually and collectively, constitute negligence.

41. As a result of Bank of Asheville's negligence, Bank of Asheville has proximately caused actual, consequential and other damages and losses to the McCarthy Entities in excess of $4.25 million, plus interest, or in an amount to conform to proof at trial.

**COUNT IV**

(Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1)

42. The McCarthy Entities incorporate by reference and reallege the allegations of paragraphs 1-41 of this Complaint as though expressly set forth herein.

43. The actions of Bank of Asheville as alleged above were in or affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1. More specifically, Bank of Asheville resides and is engaged in the business of banking in this District. As part of that business, Bank of Asheville agreed to maintain the Account and accepted $4.25 million from the McCarthy Entities to fund the Account.

44. The actions of Bank of Asheville as alleged above constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. In particular, in addition to violating their agreement to require two signatures on the Account and obtain written authorization from McCarthy before releasing any funds, Bank of Asheville acted unfairly and deceptively at least by:

a. inducing the McCarthy Entities to deposit funds with Bank of Asheville that it never intended to properly safeguard or monitor;

b. failing to implement proper procedures to maintain reasonable policies and procedures to prevent funds from being withdrawn without proper authorization;

c. removing the McCarthy Entities from the Account without their authorization or knowledge;

d. terminating the McCarthy Entities' ability to access the Account without their authorization or knowledge;

e. refusing to provide the McCarthy Entities with any information regarding the Account; and

f. upon information and belief, knowingly accepting a portion of Vinson's unauthorized withdrawals in payment of other obligations owed to Bank of Asheville by Vinson and/or business interests controlled by Vinson.

45. The actions of Bank of Asheville as alleged above are immoral, oppressive, unscrupulous and substantially injurious to the McCarthy Entities, and constitute substantial aggravating circumstances.

46. As a direct and proximate result of the acts of Bank of Asheville, the McCarthy Entities have been damaged in excess of $4.25 million, plus interest, or in an amount to conform to proof at trial.

47. Pursuant to the provisions of N.C. Gen. Stat. §§ 75-16 and 75-16.1, the McCarthy Entities are also entitled to recovery of treble damages and reasonable attorneys' fees and costs from Bank of Asheville.

## COUNT V

(Breach of Fiduciary Duty)

48. The McCarthy Entities incorporate by reference and reallege the allegations of paragraphs 1-47 of this Complaint as though expressly set forth herein.

49. Through its President and Chief Executive Officer, Bank of Asheville provided written, specific, and personal assurances that:

a. it would require two signatures for any withdrawal from the Account;

b. it would confirm that any withdrawal contains the necessary two signatures; and

c. it would not withdraw any funds the from the Account absent written authorization from McCarthy.

50. As a result of these promises and written agreements and direct communications with Bank of Asheville's President and Chief Executive Officer, the McCarthy Entities placed special confidence and trust in Bank of Asheville and believed Bank of Asheville would give due regard to their interests in monitoring the Account and ensuring its promises and agreements were fulfilled before allowing funds to be withdrawn from the Account.

51. During all relevant time periods, Bank of Asheville enjoyed and special influence and dominion over the McCarthy Entities and took undue advantage of its superior position. Indeed, the McCarthy Entities relied on Bank of Asheville's and its President and Chief Executive Officer's personal assurances in electing to deposit funds with Bank of Asheville. Absent these assurances and agreements, the McCarthy Entities never would have conducted any business, much less deposited over $4.25 million in funds, with Bank of Asheville.

52. By failing to uphold its promises and agreements and allowing Vinson to withdraw funds from the Account without adhering to the two-signature requirement or obtaining McCarthy's written authorization, Bank of Asheville breached its fiduciary duties. In

addition, upon information and belief, Bank of Asheville breached its fiduciary duties by knowingly accepting a portion of Vinson's unauthorized withdrawals for its own benefit and in payment of other obligations owed to Bank of Asheville by Vinson and/or business interests controlled by Vinson.

53. As a result of Bank of Asheville's breach of its fiduciary duties, the McCarthy Entities have suffered actual, consequential and other damages and losses in excess of $4.25 million, plus interest, or in an amount to conform to proof at trial. The McCarthy Entities are also entitled to punitive damages to reflect the aggravating circumstances of Bank of Asheville's wanton, malicious and oppressive conduct in breaching its fiduciary duties.

**COUNT VI**
(Fraud)

54. The McCarthy Entities incorporate by reference and reallege the allegations of paragraphs 1-53 of this Complaint as though expressly set forth herein.

55. As described more fully above, McCarthy directed and authorized the McCarthy Entities to deposit $4.25 million with Bank of Asheville in reasonable reliance upon its May 22, 2009 written and specific representations that it would require two signatures on the Account, confirm that each withdrawal contained the required two signatures, and obtain written authorization from McCarthy prior to releasing any funds from the Account.

56. Upon information and belief, these direct and specific false representations were reasonably calculated to deceive the McCarthy Entities and were made with intent to deceive the McCarthy Entities. In particular, upon information and belief, Bank of Asheville knowingly, willfully or recklessly made these direct and specific false statements and representations with the intent to defraud the McCarthy Entities and induce them to deposit funds with Bank of

Asheville that it never intended to properly safeguard or monitor. These direct and specific false representations deceived the McCarthy Entities, and resulted in damage to them.

57. In particular, Bank of Asheville, for its own benefit, allowed Vinson to withdraw over $4.25 million from the Account just over two weeks after the Account was established, removed the McCarthy Entities from the Account without their authorization or knowledge, terminated the McCarthy Entities' ability to access the Account without their authorization or knowledge, and upon information and belief, accepted at least a portion of Vinson's unauthorized withdraws in payment of other obligations owed to Bank of Asheville by Vinson and/or business interests controlled by Vinson.

58. Moreover, Bank of Asheville has improperly refused to and continues to refuse to provide the McCarthy Entities with any information regarding the Account. In particular, the McCarthy Entities have requested information on the Account through written correspondence dated:

a. November 9, 2009 (requesting confirmation on "the account balance" and "monthly statements on this account");

b. November 11, 2009 (requesting "the statement of account that [McCarthy] is entitled to receive");

c. November 24, 2009 (requesting "a current statement of this account");

d. December 2, 2009 (requesting "copies of all bank statements and checks written on this account from its inception as well as a report of all activity within the account since the date of the most recent bank statement");

e. December 8, 2009 (requesting "a response regarding this most serious matter"); and

f. May 12, 2010 (requesting "bank statements for the escrow account, any and all communications (including emails) between Mr. Vinson and the Bank, copies of all account statements for any Bank of Asheville account held by Mr. Vinson or any company controlled by him, information on what accounts the $4,249,986.00 transferred on June 18, 2009 went to, minutes of the Board of Directors, document retention policies, the alleged corporate resolution policy referenced in W.O. Brazil's January 5, 2010 letter to Michael McNamee, information that Mr. Vinson or any company controlled by him used any of the escrow account or proceeds from the escrow account to make payments to the Bank of Asheville, and any other documents and information relevant to the subject matter of the suit").

59. By refusing to provide the McCarthy Entities with any information regarding the Account, Bank of Asheville has improperly withheld information exclusively within its control.

60. Before filing this Complaint, the McCarthy Entities thoroughly investigated all possible sources of information, including but not limited to all publicly available relevant information. As part of that investigation, the McCarthy Entities have been informed and believe that Bank of Asheville and Vinson have a long-standing business relationship and improperly acted in concert to the detriment of the McCarthy Entities and in total disregard of their rights. However, due to Bank of Asheville's repeated and ongoing and improper refusal to provide the McCarthy Entities with any information related to the Account, some of the underlying information relating to Bank of Asheville's conduct and the particulars thereof is not available to the McCarthy Entities and lies exclusively within the possession and control of Bank of Asheville.

61. As a result of Bank of Asheville's fraudulent conduct, the McCarthy Entities have suffered actual, consequential and other damages and losses in excess of $4.25 million, plus interest, or in an amount to conform to proof at trial. The McCarthy Entities are also entitled to punitive damages to reflect the aggravating circumstances of Bank of Asheville's wanton, malicious and oppressive fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, the McCarthy Entities respectfully prays for the following relief:

(1) Judgment in the McCarthy Entities' favor on all claims in an amount in excess of $4.25 million for actual, consequential and other damages;

(2) An accounting by Bank of Asheville for all funds withdrawn and/or disbursed by Vinson from the Account;

(3) An award of prejudgment and post-judgment interest;

(4) An award of attorneys' fees, treble damages, costs and/or punitive damages as may be appropriate;

(5) A jury trial on all issues so triable; and

(6) Such other relief as this Court deems just and proper.

Respectfully submitted, this 18th day of June 2010.

**HUNTON & WILLIAMS LLP**

/s/ Brent A. Rosser

A. Todd Brown [N.C. Bar No. 13806]
Brent A. Rosser [N.C. Bar No. 28781]
Bank of America Plaza
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700
(704) 378-4890 - Fax
Email: tbrown@hunton.com
Email: brosser@hunton.com

*COUNSEL for PLAINTIFFS*

Stuart C. Brinn
Strauss & Troy
The Federal Reserve Building
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202-4018
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
E-mail: scbrinn@strausstroy.com

*OF COUNSEL FOR PLAINTIFFS*